IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AXIS SURPLUS INSURANCE | § | |
| COMPANY a/s/o O'Neil & | § | |
| Associates, Inc., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-3745 |
| | § | |
| MITSUBISHI CATERPILLAR | § | |
| FORKLIFT AMERICA INC., | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion to Dismiss [Doc. # 34] filed by

Defendant Mitsubishi Caterpillar Forklift America Inc. ("MCFA"), to which Plaintiff

AXIS Surplus Insurance Company ("AXIS") filed a Response [Doc. # 40], and

Defendant filed a Reply [Doc. # 41].  Having reviewed the full record and applicable

legal authorities, the Court **denies** the Motion to Dismiss the equitable-subrogation-

based breach of contract claim and **grants** the Motion to Dismiss as to the negligent

misrepresentation, equitable estoppel, promissory estoppel, and quasi-estoppel claims.

## I.    BACKGROUND

AXIS filed this lawsuit asserting that it is subrogee to O'Neil & Associates, Inc. ("O'Neil").[1]  In 2005, MCFA entered into a license agreement with the predecessor-in-interest to Snap-On Business Solutions, Inc. ("SBS") for SBS to create and maintain MCFA's web-based electronic parts management system.

After a dispute arose between SBS and MCFA, MCFA contracted for O'Neil to create a parts management system.  Specifically, AXIS alleges that MCFA and O'Neil entered into a Consulting Services Agreement.  O'Neil was to run a software program known as a "Scraper Program" in order to obtain a copy of MCFA's parts information from the SBS website.  To facilitate the work, MCFA agreed to provide O'Neil with all necessary user names and passwords to enable O'Neil to access the SBS website.  AXIS alleges that O'Neil and MCFA amended the Consulting Services Agreement to include a provision for MCFA to defend and indemnify O'Neil from any claims arising out of O'Neil's acquisition of source data from third parties ("Amended Indemnity Provision").

In July 2009, SBS sued O'Neil based on O'Neil's access to and operation of SBS's program with user names and passwords provided by MCFA.  SBS asserted

---

[1]     In the Original Complaint [Doc. # 1], AXIS alleged contractual and statutory subrogation.  Those bases for subrogation were dismissed by the Court in a Memorandum and Order [Doc. # 14] entered December 27, 2011.  In its Third Amended Complaint [Doc. # 33], AXIS relies on equitable subrogation to support each of its claims against MCFA.

claims for violations of the Federal Computer Fraud and Abuse Act, a claim for trespass to chattels, breach of contract, copyright infringement, and misappropriation of trade secrets.  O'Neil notified AXIS of the lawsuit and AXIS provided a defense. Following a May 2010 jury trial on all claims except the misappropriation of trade secrets claim, the jury returned a general verdict in favor of SBS for the sum of $658,000.00.[2]  O'Neil and SBS subsequently settled the dispute and O'Neil obtained a full release of all claims SBS had against O'Neil and/or MCFA.  The total amount of the settlement plus defense costs exceeded the $1,000,000.00 policy limits.  As equitable subrogee to O'Neil, AXIS seeks reimbursement from MCFA for $1,000,000.00.

In the Third Amended Complaint, AXIS asserts a breach of contract claim for breach of the indemnity agreement, a negligent misrepresentation claim, and claims for equitable estoppel, promissory estoppel, and quasi-estoppel.  MCFA  moved to dismiss the Third Amended Complaint.  The Motion to Dismiss has been fully briefed and is ripe for decision.

## II.    STANDARD FOR MOTION TO DISMISS

---

[2]    AXIS alleges in the Third Amended Complaint that the jury verdict "can only be explained" as a finding of liability on the breach of contract claim exclusively.  *See* Third Amended Complaint, ¶¶ 63, 65.  This allegation is inconsistent with and contrary to AXIS's claim in the Original Complaint for contribution pursuant to Ohio Revised Code § 2307.25(A), which allows a claim for contribution from **a joint tortfeasor**.  *See* OHIO REV. CODE § 2307.25(A) (emphasis added).

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted.  *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009).  The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true.  *Id.*  The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face."  *See Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009).  When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief.  *Id.* at 1950.  Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory.  *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

## III.  ANALYSIS

AXIS asserts that it is entitled, under the doctrine of equitable subrogation, to stand in O'Neil's shoes and assert claims against MCFA for breach of contract, negligent misrepresentation, equitable estoppel, promissory estoppel, and quasi-estoppel.  MCFA asserts that AXIS has failed to allege a factual basis for the application of equitable estoppel.  MCFA argues additionally that AXIS, standing in

the shoes of O'Neil, cannot state a claim for relief for negligent misrepresentation, equitable estoppel, promissory estoppel, and quasi-estoppel.

### A.   Equitable Subrogation

"When an insurer pays a loss, the insurer becomes equitably subrogated to its insured's rights and stands in the insured's shoes against the tortfeasor who caused the loss." *Bennett Truck Transport, LLC v. Williams Bros.* Construction, 256 S.W.3d 730, 733 (Tex. App. – Houston [14th Dist.] 2008). "The party claiming entitlement to equitable subrogation must prove that it acted involuntarily in paying a debt and that the debt was one on which the other party is primarily liable." *Id.* (citing *Mid–Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007)). "Texas courts are particularly hospitable to the doctrine." *Id.* at 734.

AXIS alleges in the Third Amended Complaint that it paid the cost of O'Neil's defense in the lawsuit by SBS because it was obligated to do so under its insurance policy issued to O'Neil. *See* Third Amended Complaint, ¶ 53. AXIS alleges further that it paid O'Neil's debt to SBS as required by the insurance policy. *See id.*, ¶ 69. AXIS alleges that the operation of the Scraper Program – on which O'Neil's liability to SBS was based – was done pursuant to MCFA's direction. *See id.*, ¶¶ 42, 45. As a result, AXIS has alleged a factual basis for equitable subrogation.

### B.   Breach of Contract Claim

In order to prevail on a breach of contract claim, a plaintiff must establish the existence of a contract, the performance or tender of performance by the plaintiff, a breach by the defendant and damages as a result of that breach. *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003) (citing *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 593 (Tex. App.—Houston [14th Dist.] 2000, no pet.)).  In this case, AXIS, standing in the shoes of O'Neil, alleges that O'Neil entered into a valid contract for MCFA to indemnify O'Neil for "any claims arising from O'Neil's efforts to acquire MCFA's electronically keyed base line parts and source data . . .." *See* Third Amended Complaint, ¶ 28.  AXIS alleges that O'Neil performed its obligations under the contract by running the Scraper Program, but that MCFA breached the contract by refusing to provide indemnity for SBS's lawsuit against O'Neil, causing O'Neil to suffer monetary damages. *See id.*, ¶¶ 82, 83, 85, 88.  These allegations sufficiently state a breach of contract claim and dismissal of this claim is denied.

### C.   <u>Negligent Misrepresentation Claim</u>

"The elements of a cause of action for negligent misrepresentation are: (1) the defendant's making a representation in the course of its business, or in a transaction in which it has a pecuniary interest; (2) the defendant's supplying 'false information' for the guidance of others in their business; (3) the defendant's failure to exercise reasonable care or competence in obtaining or communicating the information; and

(4) the plaintiff's suffering pecuniary loss by justifiably relying on the representation."

*Beal Bank, S.S.B. v. Schleider*, 124 S.W.3d 640, 651 (Tex. App. – Houston [14th Dist.] 2003) (citing *Allied Vista, Inc. v. Holt,* 987 S.W.2d 138, 141 (Tex. App. – Houston [14th Dist.] 1999, *pet. denied*) (citing *Fed. Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442 (Tex. 1991))).  "[N]egligent misrepresentation is a cause of action recognized in lieu of a breach of contract claim, not usually available where a contract was actually in force between the parties."  *Id.* (quoting *Airborne Freight Corp., Inc. v. C.R. Lee Enters., Inc.,* 847 S.W.2d 289, 295 (Tex. App. – El Paso 1992, writ denied)).

In the Third Amended Complaint, AXIS alleges specifically that the subject representations were made "in the express provisions of the Consulting Services Agreement" and "in the express provisions of the Amended Indemnity Provision." *See* Third Amended Complaint, ¶¶ 91-93.  Because there was a contract in force between O'Neil and MCFA in which the alleged representations were included, AXIS fails to state a claim for negligent misrepresentation under Texas law.  MCFA's motion to dismiss the negligent misrepresentation claim is granted.

### D.    Equitable Estoppel Claim

The doctrine of equitable estoppel requires (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of

those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations. *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 515–16 (Tex. 1998); *Dean v. Frank W. Neal & Associates, Inc.,* 166 S.W.3d 352, 357–58 (Tex. App.- Fort Worth 2005, no pet.).  A party is presumed to know the terms of its contracts and, consequently, assertions that an opposing party misrepresented the terms of the contract do not constitute equitable estoppel.  *See Frumanite Worldwide, Inc. v. NextCorp, Ltd.*, 339 S.W.3d 326, 335 (Tex. App. – Dallas 2011).

As was true in connection with the negligent misrepresentation claim, AXIS alleges that MCFA made representations "in the express provisions of the Consulting Services Agreement" and "in the express provisions of the Amended Indemnity Provision . . .."  *See* Third Amended Complaint, ¶¶ 99, 101.  AXIS now seeks to estop MCFA from "benefiting" from the terms of the contract with O'Neil.  Because the alleged representations were included in a written contract between MCFA and O'Neil, AXIS cannot assert a claim for equitable estoppel as O'Neil's subrogee.

AXIS seeks to estop MCFA also from "now claiming that O'Neil's actions in obtaining the SBS data was unlawful conduct . . .."  *See id.,* ¶ 106.  There are no allegations in the Third Amended Complaint, however, that MCFA claims O'Neil's

actions were unlawful.  Indeed, it appears that MCFA maintains its position that it was the owner of the parts information on the SBS website and was authorized to permit O'Neil to use its login IDs and passwords to access that website.  As a result, the request to apply equitable estoppel to prevent MCFA from making an argument they are not currently making fails to state a claim for relief.

### E.      Promissory Estoppel Claim

"Promissory estoppel is generally not available where, as here, a contract exists between the parties governing the subject matter of the promise." *Garcia v. Kastner Farms, Inc.*, 789 S.W.2d 656, 662 (Tex. App. – Corpus Christi 1990) (citing *Kneip v. Unitedbank – Victoria,* 734 S.W.2d 130, 133 (Tex. App. – Corpus Christi 1987, no writ); *Wheeler v. White*, 398 S.W.2d 93, 97 (Tex. 1965)).  Where, as here, the promise Plaintiff wants to enforce through promissory estoppel was allegedly made in conjunction with a valid contract, there can be no separate claim for promissory estoppel.  *See Conway v. Saudi Arabian Oil Co.*, 867 F. Supp. 539, 543 (S.D. Tex. 1994).

As noted above, MCFA's promise to indemnify O'Neil is contained in a written contract between the two parties.  As a result, AXIS fails to state a claim for promissory estoppel precluding MCFA from disclaiming its obligations under the Amended Indemnity Provision.

As was discussed in connection with the equitable estoppel claim, AXIS seeks also to estop MCFA through promissory estoppel from "claiming that O'Neil's conduct was unlawful . . .." *See id.*. ¶ 110. Because there are no allegations in the Third Amended Complaint that MCFA now claims O'Neil's actions were unlawful, the request to apply promissory estoppel to prevent MCFA from making an argument they are not currently making fails to state a claim for relief.

### F.   Quasi-Estoppel Claim

Quasi-estoppel is an affirmative defense. *See Lindley v. McKnight*, 349 S.W.3d 113, 131 (Tex. App. – Fort Worth 2011). "Quasi-estoppel refers to certain legal bars, such as ratification, election, acquiescence, or acceptance of benefits." *Furmanite*, 339 S.W.3d at 334 (citing *Steubner Realty 19, Ltd. v. Cravens Road 88, Ltd.,* 817 S.W.2d 160, 164 (Tex. App. – Houston [14th Dist.] 1991, no writ)). "Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken." *Id.* (citing *Lopez v. Munoz, Hockema & Reed, L.L.P.,* 22 S.W.3d 857, 864 (Tex. 2000)). Assertions that a party to a contract failed to inform the other party regarding the contract's terms fails to state a claim for quasi-estoppel. *See id.* at 335.

AXIS may assert quasi-estoppel in this case only because it is equitably subrogated to any right O'Neil may have to assert the affirmative defense.

Consequently, AXIS is standing in the shoes of O'Neil.  *See Bennett*, 256 S.W.3d at 733.  AXIS, therefore, may avoid dismissal of the affirmative defense of quasi-estoppel only by alleging that MCFA is now asserting a right that is inconsistent with a position it previously took *with O'Neil*.

In the Third Amended Complaint, AXIS, standing in the shoes of O'Neil, seeks to estop MCFA from disclaiming its obligations under the Amended Indemnity Provision and/or from seeking to avoid its indemnity obligations by MCFA claiming that O'Neil's conduct was unlawful.  *See* Third Amended Complaint, ¶ 114.  To support the quasi-estoppel affirmative defense, AXIS asserts that MCFA now claims that its indemnity obligations are void (1) because of the integration clause in the Consulting Services Agreement and (2) because O'Neil acted unlawfully.  *See id.*, ¶ 113.

There are no allegations in the Third Amended Complaint, however, that MCFA previously took the position with O'Neil that the integration clause in the Consulting Services Agreement did *not* operate to void its indemnity obligations in the Amended Indemnity.  AXIS's only allegation is that MCFA did not previously "assert the position that the Amended Indemnity Provision . . . was voided by the Integration Clause in the Consulting Services agreement. . .."  *See id.*, ¶ 77.  Failing

to assert a position is significantly different from asserting a contrary position, and the former does not support a quasi-estoppel affirmative defense.

Additionally, there is no allegation in the Third Amended Complaint that MCFA previously took the position in its dealings with O'Neil that O'Neil acted unlawfully when it accessed the SBS website and ran the Scraper Program. Indeed, it appears from MCFA's briefing in this case that it has been and remains MCFA's position that O'Neil was properly authorized to access the SBS website. The allegation in the Third Amended Complaint is that MCFA has asserted *in this lawsuit in connection with AXIS's claim for equitable subrogation* that O'Neil acted unlawfully. This allegation does not state a claim for quasi-estoppel by AXIS as O'Neil's subrogee because it does not assert that MCFA made this assertion against O'Neil. The allegation is, instead, that MCFA's counsel in this lawsuit raised the prior verdict against O'Neil as an argument against AXIS's own claim for equitable subrogation.

Absent an allegation that MCFA had affirmatively taken inconsistent positions in its dealings with O'Neil, MCFA is entitled to dismissal of the quasi-estoppel affirmative defense.

## IV.   CONCLUSION AND ORDER

Based on the foregoing, the Court concludes that Plaintiff may assert claims against MCFA as the equitable subrogee of O'Neil.  Defendant's Motion to Dismiss the breach of contract claim is denied.  Plaintiff, as subrogee, has failed to state a claim upon which relief can be granted as to the negligent misrepresentation, equitable estoppel, promissory estoppel, and quasi-estoppel claims.  Accordingly, it is hereby

**ORDERED** that Defendant's Motion to Dismiss [Doc. # 34] is **DENIED** as to the equitable-subrogation-based breach of contract claim and **GRANTED** as to the remaining claims.

SIGNED at Houston, Texas, this **16ᵗʰ** day of **May, 2012**..

_____

Nancy F. Atlas
United States District Judge